[Cite as *State v. Walker*, 2013-Ohio-1687.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                    :
                                 :       Appellate Case No. 25173
        Plaintiff-Appellee       :
                                 :       Trial Court Case No. 2011-CR-944
v.                               :
                                 :
GLENN B. WALKER, JR.             :       (Criminal Appeal from
                                 :        Common Pleas Court)
        Defendant-Appellant      :
                                 :

. . . . . . . . . .

O P I N I O N

Rendered on the 26th day of April, 2013.

. . . . . . . . . .

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. #0020084, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

RICHARD A. NYSTROM, Atty. Reg. #0040615, 120 West Second Street, 1502 Liberty Tower, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, P.J.

    {¶ 1}    Defendant-appellant Glenn B. Walker, Jr. appeals from his conviction and

sentence for Murder. Walker contends that the trial court erred in overruling his motion to suppress evidence obtained from a search of his vehicle. He further contends that the evidence at trial was insufficient to support his conviction and that his conviction was against the manifest weight of the evidence. Walker also contends that he received ineffective assistance from his trial counsel.

{¶ 2} We conclude that the trial court did not err in overruling Walker's motion to suppress evidence. Furthermore, the evidence presented at trial was sufficient to support Walker's conviction and the guilty verdict was not against the manifest weight of the evidence. Finally, we conclude that Walker has failed to establish that his trial counsel provided ineffective assistance. Accordingly, the judgment of the trial court is Affirmed.

## I. Walker's Mother Is Murdered

{¶ 3} In early 2011, Walker was living with his mother. He and his mother had a strained relationship over a number of issues, including Walker's lack of a job, his lack of contributions to the household, and other behavioral issues. During one dispute in early March 2011, Walker destroyed a number of angel figurines upon which his mother placed great value. Walker's mother kicked him out of her house and made it clear that he was no longer welcome there. Walker's mother had the windows to her home nailed shut in an attempt to prevent Walker from returning to the home.

{¶ 4} After Walker was kicked out of his mother's home, he began living out of his car. Walker would park the car either in his mother's driveway or on the street within sight of his mother's house.

{¶ 5}     By March 15, 2011, Walker was once again living in his mother's home.   On March 16th, Walker's mother drove to her mother's house after work to record some family stories for a project the two of them were doing.   At around 6:00 P.M., a neighbor of Walker's mother noticed that Walker's car was sitting unoccupied in his mother's driveway.   Walker's mother arrived home by 8:30 P.M.   A neighbor heard loud voices coming from the home later that evening and at around 2:00 A.M. the next morning, the neighbor heard a loud slamming or thudding sound.

{¶ 6}     Walker's mother did not show up for work on March 17th.   Later that afternoon, Walker's mother was found dead in her bed, a victim of a gunshot wound to her head.   The house had been ransacked, the kitchen was a mess, and Ms. Walker's ceramic angels and framed photographs were broken and strewn throughout the house.   Nothing of value was missing, and Walker was nowhere to be found.   The Huber Heights Police identified Walker as a suspect in the murder.

{¶ 7}     The next day, the police located Walker at a library on Troy Street in Dayton, based on a tip that he was using a computer terminal there to post on Facebook.   The police arrested Walker and took him to the police department for questioning.   Walker's car was parked across the street in an open lot, and Police Detective Colvin took a quick look inside the trunk and passenger compartment but did not touch or move anything.   Detective Colvin then had it towed to the Huber Heights Police Department, where it was parked in an evidence bay and sealed until a search warrant was obtained.

## II.   Course of the Proceedings

{¶ 8}    Walker was indicted on one count of Murder, in violation of R.C. 2903.02(B), with a firearm specification.   Walker pled not guilty by reason of insanity.   The trial court found him competent to stand trial, and Walker withdrew his original plea.

{¶ 9}    Walker filed a motion to suppress physical evidence seized from his car and statements he made to the police after his arrest.   After an evidentiary hearing, the State agreed that certain statements by Walker should not be used at trial.   The trial court overruled the portion of Walker's motion to suppress relating to the evidence police found in Walker's car.

{¶ 10}   Walker waived his right to a jury trial.   Following a bench trial, Walker was found guilty of Murder, and the firearm specification.   The trial court sentenced Walker to a prison term of fifteen years to life on the count of Murder, and three years on the firearm specification, to be served consecutively, for a total prison term of eighteen years to life.   From this judgment, Walker appeals.

### III.   Walker's Conviction Is Supported by Sufficient Evidence
### and Is Not Against the Manifest Weight of the Evidence

{¶ 11}   Walker's First Assignment of Error states:

WHETHER DEFENDANT'S CONVICTION AND SENTENCE FOR THE MURDER CHARGE WAS SUPPORTED BY SUFFICIENT QUALITATIVE AND QUANTITATIVE EVIDENCE, ERRONEOUS AS A MATTER OF LAW, AND THEREBY VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

AND ARTICLE I SECTION 10 OF THE OHIO STATE CONSTITUTION.

{¶ 12}   Walker contends that the circumstantial evidence presented at trial is insufficient to support his conviction.   Furthermore, Walker contends that the guilty verdict is against the manifest weight of the evidence.   We do not agree.

{¶ 13}   "A challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence."   *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio- 6046, 837 N.E.2d 315, ¶ 69.   "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any  rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'   * * *   A claim that a jury verdict is against the  manifest weight of the evidence involves a different test.   'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the   jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.   The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'"   (Citations omitted.)   *Id*. at ¶ 70-71.

{¶ 14}   Walker was convicted of Murder, in violation of R.C. 2903.02(B), which provides that: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."   The offense of violence committed by Walker was Felonious Assault, in violation of R.C. 2903.11(A), which provides that "[n]o person shall knowingly do either of the following:  (1)

Cause serious physical harm to another or to another's unborn; (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

{¶ 15}  The evidence presented at trial was sufficient to establish the necessary elements of Murder in violation of R.C. 2903.02(B), and the guilty verdict was not against the manifest weight of the evidence.  Walker's mother was shot in the head while she was in her bed in the late evening of March 16th or the early morning hours of March 17th.  Walker was living with his mother at this time and a neighbor confirmed that Walker's car was in his mother's driveway during the evening of March 16th and early morning hours of March 17th.  Neighbors heard loud voices coming from the home around 10:00 p.m. on March 16th and heard a loud thud come from the house at around 2:00 a.m. on March 17th.

{¶ 16}  There was also testimony that Walker had been arguing with his mother in the weeks leading up to her death, and that Walker had destroyed a number of his mother's angel figurines after an argument with her.  When Walker's mother was found dead in her bed, the police discovered a number of additional angel figurines destroyed in a similar fashion.

{¶ 17}  A firearms expert from the Miami Valley Regional Crime Lab determined that Walker's mother was killed by a bullet fired from a .45 caliber Hi-Point JHP semi-automatic pistol.  This type of gun was linked to Walker in a number of ways.  In the search of a trash can at the scene of the crime, the police discovered a box that had once contained a .45 caliber Hi-point JHP semi-automatic pistol.  The empty gun box was stuffed in a plastic bag bearing Walker's fingerprint.  Also, the serial number of the gun associated with the box in the trash can was the same as the serial number displayed on the gun box that Huber Heights police had found

in Walker's closet in February 2006, when the police were summoned in response to a domestic complaint involving Walker, his girlfriend, and a gun. Moreover, photographs admitted into evidence at trial showed Walker brandishing two guns at once: a .45 caliber Hi-Point JHP semi-automatic pistol and a 9mm Ruger P95. It was further established that Walker did not purchase the Ruger until December 21, 2010, which means that Walker owned the exact make and model of the murder weapon within three months of his mother's death.

{¶ 18} Based on testimony of a representative of the Crime Lab and the testimony of Walker's brother, it was established at trial that the bullet that killed Walker's mother was manufactured at about the same time as the bullets that were found in Walker's bedroom. These bullets also matched some bullets found in Walker's car.

{¶ 19} The condition of the house also supported the guilty verdict. There was no evidence of a forced entry, and the killer did not take anything of value. Also, the similarity of the killer's destruction of the angel figurines with Walker's destruction of the figurines only two weeks prior to the murder is evidence that he was the killer.

{¶ 20} Defendant contends that his conviction should be reversed because no murder weapon was found and there was no eyewitness to the shooting of his mother. Although the murder weapon was not found, and nobody witnessed Walker shoot his mother, there was overwhelming, credible circumstantial evidence that he committed the murder of his mother. Evidence does not have less weight merely because it is circumstantial, rather than direct. *State v. Jenks,* 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991). Based on the overwhelming, credible circumstantial evidence against Walker, we conclude that sufficient evidence supports Walker's conviction, and that the guilty verdict is not against the manifest weight of the evidence.

{¶ 21} Walker also contends in this assignment of error "that he received ineffective assistance of counsel that negatively impacted his defense when his attorney failed to timely raise his alibi defense." Brief, p. 8. According to Walker, his trial counsel failed to provide timely notice of an alibi defense to the State, and the trial court consequently overruled the alibi defense. Walker contends that "he was clearly prejudiced" by his trial counsel's failure to timely raise the alibi defense and "[c]onfirmation of an alibi could certainly have changed the outcome of this trial especially considering the limitations and ambiguities in the evidence actually presented." *Id.* at 12-13.

{¶ 22} A claim of ineffective assistance of trial counsel requires both a showing that counsel's performance was deficient and that the defendant was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A reviewing court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The prejudice prong requires a finding that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, with a reasonable probability being "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. *See also State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

{¶ 23} Walker's trial counsel did not file a timely notice of alibi. According to Walker, this failure to file a timely notice prevented him from calling two witnesses who would have testified that Walker was with them during at least part of the period during which his mother was murdered. Although the trial court did initially deny Walker's request to present an alibi defense, the trial court reconsidered this ruling during the trial and announced that Walker would

be permitted to present the testimony of alibi witnesses. But Walker did not present any witnesses at trial regarding an alibi, and his trial counsel stated on the record that he had made a strategic decision not to do so after further investigation. Tr. 1026.

{¶ 24} "'[T]he strategic decision of a trial attorney will not form the basis of a claim of ineffective assistance of counsel, even if there may have been a better strategy available.'" *State v. Daniel*, 2d Dist. Montgomery No. 24267, 2011-Ohio-1278, ¶ 26, quoting *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980). And, in any event, without some indication in the record of how credible, and how probative, the testimony of the alleged alibi witnesses would have been, it is impossible for us to determine that counsel's decision not to call them was unsound, much less that it amounted to ineffective assistance.

{¶ 25} Walker's First Assignment of Error is overruled.

**IV. The Trial Court Did Not Err in Overruling Walker's Motion to Suppress**

{¶ 26} Walker's Second Assignment of Error states:

WHETHER THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE FRUIT OF A WARRANTLESS SEARCH AND THEREBY PRECLUDED DEFENDANT'S CONSTITUTIONAL RIGHTS TO UNREASONABLE SEARCHES AND DUE PROCESS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, OF THE OHIO STATE CONSTITUTION.

{¶ 27} Walker contends that the trial court erred in overruling his motion to suppress because his vehicle was located in the City of Dayton, and the officers who authorized the car to

be towed worked for the Huber Heights Police Department. Walker appears to be contending that the Huber Heights police officers had no jurisdiction in the City of Dayton, and therefore had no jurisdiction to have his vehicle towed. We do not agree with Walker's contentions.

{¶ 28} The trial court made the following pertinent findings of fact in its decision overruling Walker's motion to suppress (Dkt. 46):

> Ms. Brown indicated to police that she was afraid of Defendant. Additional investigation revealed the existence of another girlfriend of Defendant Walker. As a result of the interviews with the girlfriends, Huber Heights Police were of the belief that Defendant was driving a blue Cadillac automobile.
>
> * * *
>
> On March 18, 2011 Detective Colvin, a thirteen (13) year veteran of the City of Huber Heights Police Department, and Detective Noll went to the Dayton Metro Library branch at 645 Troy Street in the City of Dayton. The Detectives saw a man they recognized as Defendant Glenn Walker at a computer in the library. They approached him and took him into custody. Defendant was patted-down and no weapons were located on his person.
>
> The Detectives walked Defendant out of the building. As the Detectives exited the building they saw his car, the blue Cadillac, located in a parking lot to a Family Dollar Store located immediately adjacent to the library. One of the officers "ran" the license plate on the blue Cadillac on their in-car computer and discovered it matched the information they had for Defendant Glenn Walker.

The Detectives, at that time, had not located the .45 caliber HI-POINT handgun and they had been advised that one of Glenn Walker's girlfriends was afraid of him and another had not been located. The Detectives were afraid that the unlocated girlfriend could be in trouble as a result of Defendant's activity.

The tow policy on the General Order, Directive Number 704, of the Huber Heights Police Division provides for the tow of a vehicle when the driver of the vehicle is taken into custody and the vehicle would be left unattended on public property or property open to the public for vehicular traffic. Under this policy the Detectives decided on March 18, 2011 they would tow Defendant's blue Cadillac to the Huber Heights Police Department. Even though the vehicle was going to be towed, the Detectives felt there was some urgency to search it on the spot. They were apparently concerned that the girlfriend could have been in jeopardy in the trunk of the car. There was this concern even though the Detectives had not detected any noise or odor from the trunk. There were no signs of an injury on the car.

The Detectives popped the trunk and it was full of bags. They did not discover a person. They did not go into the passenger compartment of the car at that time. The Detectives had opened the trunk by virtue of having access to the Defendant's keys. The Defendant did not provide express permission to enter the trunk. Shortly thereafter the Officers performed a cursory inventory of the car. This activity involved looking in the passenger's compartment.

Defendant's blue Cadillac automobile was towed from the parking lot on

Troy Street in the City of Dayton to the Huber Heights Police Department in the City of Huber Heights. The vehicle was placed in a bay at the police department and taped up.

On March 21, 2011 a search warrant was obtained for the blue 1994 Cadillac four door. The search warrant was approved by a judge of the Montgomery County Municipal Court, Eastern Division. Detective Gebhart of the Huber Heights Police Department provided an affidavit for the search warrant. The affidavit did not contain any indications of items found or seen in the trunk and passenger compartment as a result of the Detectives popping the trunk on March 18, 2011 at the Family Dollar parking lot.

{¶ 29} Based on a review of its findings of fact and the arguments provided by Walker and the State, the trial court concluded that the impoundment and the attendant search of the blue Cadillac did not violate the Fourth Amendment's prohibition of unreasonable searches and seizures. Dkt. 46. The trial court reasoned, in pertinent part:

The Huber Heights Police Department acted pursuant to its tow policy, directive 704, in the City of Dayton. The blue Cadillac was found in a parking lot at the Family Dollar store on Troy Street in the City of Dayton. The vehicle was towed from the City of Dayton to the City of Huber Heights. The City of Dayton Police Department was not involved in the impoundment, tow or search of the Cadillac. The provisions of the City of Dayton Police Department tow policy were not invoked.

The Huber Heights Police Division tow policy is silent as to where it may

be utilized. There is no provision in the directive indicating that it can only be utilized in the territorial limits of Huber Heights. There is no provision that expressly indicates it can be invoked outside the city limits. As indicated, the touchstone is reasonableness. Is it reasonable for the Huber Heights Police Department to invoke its tow policy in conjunction with its investigation of a crime committed within its jurisdiction involving suspects in that crime? The policy was utilized within a short period of time after the purported crime occurred. It was utilized in a place that is within ten (10) miles of the alleged place of occurrence. The apparent owner of the car was taken into custody by the Huber Heights Police Department. The Huber Heights Police Department would be potentially liable for claims concerning lost or stolen property and possibly claims involving the potential hazards posed by the impounded property.

The City of Huber Heights is part of the greater Dayton Metropolitan Area. It is immediately adjacent to the City of Dayton in some places. It is within the same county as the City of Dayton. The cities of Dayton and Huber Heights are within the same area of development. There is a great deal of intercity travel between the cities of Dayton and Huber Heights.

The parties have briefed this issue. There is no authority presented for the proposition that it is unlawful for a police department to exercise its tow policy in a contiguous jurisdiction. There is no authority for the proposition that the tow policy of a particular jurisdiction cannot be utilized in a contiguous or nearby jurisdiction in connection with a crime committed in the utilizing agency's

territorial limits.

Based on all the circumstances, it is reasonable to conclude that the City of Huber Heights Police did not act unreasonably in utilizing its tow policy, simply because the vehicle was found in the City of Dayton. The police were investigating an apparent crime that occurred in their jurisdiction involving a suspect who owned the subject vehicle. They were potentially subject to claims related to the vehicle. They were acting timely and relatively close to their city-territory. Dkt. 46.

{¶ 30} "In reviewing the trial court's ruling on a motion to suppress evidence, this court must accept the findings of fact made by the trial court if they are supported by competent, credible evidence. * * * However, 'the reviewing court must independently determine, as a matter of law, whether the facts meet the appropriate legal standard.'" *State v. Roberts*, 2d Dist. Montgomery No. 23219, 2010-Ohio-300, ¶ 13. Based on a review of the transcript from the suppression hearing, we find that the trial court's findings of fact are supported by competent, credible evidence.

{¶ 31} Walker's motion to suppress and contentions on appeal are based on the premise that a police officer may not make an arrest of a person and then tow that person's vehicle when the police officer is outside of his territorial jurisdiction. R.C. 2935.03(B)(1) states that a law enforcement officer may make a warrantless arrest of any person who the officer has reasonable grounds to believe has committed an offense of violence in the officer's territorial jurisdiction. The murder of Walker's mother took place within the territorial jurisdiction of the police officers who arrested Walker. Therefore, the Huber Heights police officers who arrested Walker had

jurisdiction to do so.

{¶ 32} Furthermore, after Walker's arrest, the police officers followed their towing policy and conducted a cursory inventory of Walker's vehicle prior to having the vehicle towed. The officers then obtained a search warrant before conducting a thorough search of the vehicle. Walker does not challenge the search warrant and does not identify on appeal what items were identified and secured at the time of the initial search of his vehicle that should be suppressed. From the record, it appears that the items ultimately used against Walker at trial were not discovered and identified until the police officers conducted a thorough search of the vehicle pursuant to the search warrant. Based on the facts before it, we cannot find that the trial court erred in overruling Walker's motion to suppress evidence obtained from Walker's vehicle.

{¶ 33} Walker also contends that "he received ineffective assistance of counsel that negatively impacted his defense * * * when his attorney failed to object to the out-of-jurisdiction and warrantless seizure of his vehicle." Brief, p. 14-15. According to Walker, his trial counsel was ineffective by failing to explore the issue of whether police officers from Huber Heights had jurisdiction to arrest Walker and seize his vehicle in the jurisdiction of the City of Dayton. *Id.* at 16.

{¶ 34} Walker's counsel did object to the warrantless search of Walker's vehicle and did explore the issue of whether Huber Heights police officers had jurisdiction to arrest Walker and seize his vehicle in the City of Dayton. Dkt. 40, 42. The trial court considered these arguments and rejected them. Therefore, Walker has not established that his trial counsel provided ineffective assistance.

{¶ 35} Walker's Second Assignment of Error is overruled.

## V. Conclusion

{¶ 36}  Both of Walker's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

HALL and WELBAUM, JJ., concur.

Copies mailed to:

Mathias H. Heck
Carley J. Ingram
Richard A. Nystrom
Hon. Timothy N. O'Connell